UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABELFATAH ELLAWENDY,<br>Plaintiff,<br>v.<br>CSUMB POLICE DEPARTMENT, et al.,<br>Defendants. | Case No. 19-cv-08417-SVK<br><br>**FURTHER SCREENING ORDER PURSUANT TO 28 U.S.C. § 1915**<br>Re: Dkt. No. 9 |

Pro se Plaintiff Abdel Fatah Ellawendy ("Plaintiff") initiated this action against Officer Jason Takagaki of the Presidio of Monterey Police Department in his official capacity; Officer Heather Murphy of the CSUMB Police Department in her official capacity; Cpl. Prebula of the CSUMB Police Department in his official capacity; and District Attorney Robin Duffy in her official capacity (collectively, "Defendants") alleging violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 18 U.S.C. § 1983. Dkt. 1 ("Complaint") at 2-3. Along with the Complaint, Plaintiff filed a request to proceed in forma pauperis, which the Court granted on February 6, 2020. Dkt. 8. The Court also issued its initial screening order for civil action filed in forma pauperis under 28 U.S.C. § 1915 and found that the Complaint did not state a claim upon which the Court may grant relief. *Id*. (the "original screening order"). Plaintiff was granted leave to amend. *Id*.

On February 19, 2020, Plaintiff filed an amended complaint ("FAC") and accompanying exhibits. Dkt. 9. The Court has conducted a further screening review of the FAC under 28 U.S.C. § 1915. The Court concludes that Plaintiff's FAC still contains defects. However, because it appears that Plaintiff may have some viable claims, the Court grants Plaintiff leave to file a second amended complaint by **June 12, 2020**.

////

**I. BACKGROUND**

**A. Factual Background**

The following facts are taken from the section of Plaintiff's FAC titled "Background of the Issue." Dkt. 9 at 3-4. Plaintiff alleges that he, "a Middle Eastern Muslim," dated Jennifer Carlquest, "an American Caucasian woman," until they broke up in July 2017. *Id*. at 3. After the breakup, Plaintiff claims that Carlquest began harassing him by visiting his house, calling his work phone, and having her boyfriend and her brother send threatening emails. *Id.* Plaintiff alleges that he reported these incidents to the Presidio of Monterey Police Department ("POM") and that Officer Jason Takagaki was assigned to investigate the case. *Id.* He alleges that Officer Takagaki "refused to offer any help saying that it was out of his jurisdiction, he asked me to delete the threatening messages, . . . [and] intentionally wiped out my work voice mail (sic) to cover the harassment messages in favor of" Carlquest. *Id*.

Plaintiff alleges that he then went to the CSU Monterey Bay Police Department ("CSUMB") to report Carlquest's threatening conduct. Dkt. 9 at 3. He alleges that he spoke with Officer Elizabeth Miller, who suggested that he "press charges for criminal threats," but that when he went to speak with her the next day, "she said that she was on leave and [Plaintiff] had to speak to a different officer." *Id*. He alleges that "the threats continued" and that he reported Carlquest for vandalism in December 2017 and stalking in January 2018. *Id*.

Plaintiff also alleges that in February 2018, Officer Takagaki "invited Carlquest to the military base to make a complaint about me to the IG." Dkt. 9 at 3. He further alleges that "they uploaded pictures of Carlquest . . . and accused me of creating the pictures." *Id*. Then, Plaintiff alleges, Officer Takagaki "invaded my office at work and seized my work computer claiming that he was conducting an investigation" in March 2018. *Id*. Plaintiff alleges that Officer Takagaki "lured me to the investigation room " and when he told Officer Takagaki that he did not want to talk, "he threatened to get me fired, he intimidated me[,] and he took me in the police car to my apartment to get my personal laptop." *Id*. Plaintiff alleges that when he refused to give Officer Takagaki the laptop, Officer Takagaki "started threatening me again [and] as he was armed, I gave him the laptop and the iPod under duress and against my will." *Id*. Plaintiff alleges that though he

2

was told the items would be returned to him the following day, he never got them back. *Id*.

Plaintiff alleges that he was fired from his federal position in April 2018 based on Officer Takagaki's "lies and false information although nothing was found in either my work or my personal computer." Dkt. 9 at 3. He alleges that he "filed an EEO complaint against [O]fficer Takagaki in which he lied again during the investigation and said that he didn't seize any personal items of mine and . . . refused to answer a question regarding if he is racist and hates Middle Eastern Muslims." *Id*. at 3-4. Plaintiff further alleges that Officer Takagaki harassed him by contacting "the management office of my residential (sic) to inform them that I'm not longer working for the Government[,] which resulted in an evacuation (sic) notice." *Id*. at 4. Plaintiff alleges that when he reported Officer Takagaki for taking his property without a warrant to the CSUMB Police Department, "they immediately accused me of false report to cover for his action, and in retaliation[,] they accused me of false police report and perjury." *Id*.

Plaintiff alleges that while he was driving in July 2018, he saw Carlquest, who immediately called the police. Dkt. 9 at 4. He alleges that at midnight on August 4, 2018, "2 CSUMB officers invaded my house and arrested me" without a warrant and without telling him the reason for his arrest. *Id*. He alleges that the officers seized his passport and violated his Fourth, Fifth, and Fourteenth Amendment rights. *Id*. He also alleges that "[t]hey put the cuffs very tight on my hand that it cut my rest (sic)." *Id*. He further alleges that after his arrest, "CSUMB invaded my house and seized electronic devices along with federal documents which are not related to any alleged crime." *Id*. He alleges that Officer Murphy "fabricated a notebook with mass shooting events and claim (sic) that it was found in my bedroom, [but] this notebook was not in any of the seized items list." *Id*. He also alleges that "[O]fficer Murphy . . . lied under oath regarding the notebook to highly accuse me . . . and because of her action I was denied bail and remained in jail for longer time." *Id*. He also alleges that Carlquest lied under oath at the same hearing "as well in many occasion (sic) specially (sic) regarding an assault incident which was proven wrong by evidence." *Id*.

Plaintiff alleges that he "plead (sic) under duress to a crime which I didn't commit due to all the harassment and discrimination I was facing" and that he "was threatened to receive a life

3

time (sic) in prison if I lose a trial and told that I'm most likely to lose because of my ethnicity and religion (Middle Eastern Muslim)." Dkt. 9 at 4. He also alleges that District Attorney Robin Duffy "added 6 counts of assault with deadly weapon to the original charge (Stalking) to highly accuse me although I have shown that I was working during the time of the incident." *Id*. He alleges that upon his release, he "asked for the release of my properties [,] which was denied by Ms. Duffy who abused her authority by destroying and dissipation of evidence." *Id*. He also alleges that Duffy "penalize[ed] me for exercising my rights to appear by instigating the judge to amend the sentencing and harassing me through my parole officer." *Id*. Plaintiff alleges that he "continue[s] to suffer harassment and discrimination for standing against corruption and abuse of authority." *Id*. He also alleges that "[a]ll the reports I made regarding crime committed by Carlquest were expunged and no action was taken despite the solid evidence and her confessions." *Id*. He further alleges that when he "requested copies of my report from CSUMB PD, my request was denied . . . and when the DA refused to take any action regarding the perjury committed by Carlquest." *Id*.

### B. Plaintiff's Claims

Plaintiff appears to bring claims for race and religious discrimination, "abuse of authority by law enforcement members," violations of his Fourth, Fifth, and Fourteenth Amendment rights, "police brutality and misconduct," "destroying and dissipation of evidence," "fabricating evidence" and "perjury and lying under oath." Dkt. 9 at 5. These claims are brought against four defendants: Officer Takagaki of the POM Police Department; Officer Murphy of the CSUMB Police Department; Cpl. Prebula of the CSUMB Police Department; and District Attorney Duffy of the Monterey District Attorney's Office. *Id*. at 7. In the section of Plaintiff's FAC titled "Argument," Plaintiff lists what the Court construes as Plaintiff's claims against each Defendant. *Id*.

Plaintiff alleges that Officer Takagaki of the POM Police Department "intentionally destroyed evidence by wiping out my entire voice mail (sic) in my work phone," wrote a "malicious report [that] caused me to lose my federal job," and "seized my personal items without a warrant and under the arm threat." Dkt. 9 at 7.

4

1       Plaintiff alleges that Officer Murphy of the CSUMB Police Department "expunged my
2 police reports," "destroyed evidence," "fabricated evidence to highly accuse me," "lied under oath
3 regarding the fabricated evidence," and that Officer Murphy and the "searching team"
4 "intentionally seized federal documents without a warrant" and "detained minor children, searched
5 them[,] and seized their belongings." Dkt. 9 at 7.

       Under the section titled "Cpl. Prebula," Plaintiff alleges that "[t]he CSUMB officers who arrested me" on August 4, 2018 "invaded my apartment, handcuffed me[,]"seized my Egyptian passport without [a] warrant," "never told me why I was under arrest," "never told me my rights," and "took me handcuffed to the CSUMB police station." Dkt. 9 at 7. He also alleges that he "told them the handcuffs were too tight on my left rest (sic) and asked them many times to loosen it up and they refused," that the "handcuffs caused a large cut on my rest (sic) and left a permanent scar," and that he "was then taken to the emergency room in Natividad hospital." *Id*.

       Plaintiff alleges that District Attorney Robin Duffy of the Monterey District Attorney's Office "pressed exaggerated charges against me based on malicious complaint," "fabricated evidence," "refused to release the children school equipment for a whole year," "refused to persecute (sic) Carlquest for any crime despite all the solid evidence," and "destroyed and dissipated important evidence." Dkt. 9 at 7.

**II.     LEGAL STANDARD PURSUANT TO 28 U.S.C. § 1915(e)(2)**

       Federal courts are required to dismiss a case filed in forma pauperis if the court determines at any time that the action is frivolous, fails to state a claim, or is directed against a defendant who is immune. 28 U.S.C. § 1915(e)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). A "frivolous" complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The Ninth Circuit has noted that Section 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Both Rule 12(b)(6) and Section 1915(e)(2)(B) require a district court to dismiss a complaint that fails to state a claim upon which relief can be granted.

       The plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In a § 1915 review, "[d]ismissal is proper only if is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citations omitted).  In its review, the Court liberally construes pro se pleadings. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).

### III. DISCUSSION

Plaintiff brings claims for relief under 28 U.S.C. § 1983.  "Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1120 (N.D. Cal. 2011) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)) (citation and internal quotation marks omitted).  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Drawsand,* 866 F. Supp. 2d at 1121 (quoting *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law. *McIntosh v. Grande-Butera*, No. 18-cv-07758-DMR, 2019 WL 5091165, at * 2 (N.D. Cal. Mar. 7, 2019) (citations omitted).  "Where multiple defendants are involved, the pleadings must establish a nexus between each defendant's actions and the alleged deprivation of plaintiff's constitutional rights." *Drawsand*, 866 F. Supp. 2d at 1120-21 (citation omitted).

### A. Claims Against Officers Takagaki and Murphy

In the original screening order, the Court explained why some of Plaintiff's claims against Officer Takagaki, Officer Murphy, and Cpl. Prebula/the CSUMB Officers may be barred by *Heck v. Humphrey,* 512 U.S. 477, 486-487 (1994).  Dkt. 8 at 5-7.  The Court asked Plaintiff to provide additional facts regarding his claims against these defendants, which Plaintiff has done. *See* Dkts. 9, 9-1.

In brief, in *Heck*, the Supreme Court held that "a court must dismiss a Section 1983 action where the plaintiff's success in the action would necessarily imply the invalidity of the plaintiff's

conviction or sentence, and the conviction or sentence has not yet been invalidated." *Pierce v. California*, No. 19-cv-03009-JST, 2019 WL 3220285, at *2 (N.D. Cal. July 17, 2019) (citing *Heck*, 512 U.S. at 486-87). However, "[w]here an alleged constitutional violation relates only to evidence that might or might not be admissible despite the error, might or might not be necessary to convict the defendant at trial, and regardless is not necessary for the defendant to enter a guilty plea, then a successful claim that the evidence was obtained in violation of the constitution would not necessarily imply the invalidity of the conviction." *Farrow v. Lipetzky*, No. 12-cv-06495-JCS, 2014 WL 1540637, at * 9 (N.D. Cal. Apr. 28, 2017).

The additional information provided by Plaintiff in his FAC and accompanying documents indicates that his claims may not be barred by the *Heck* doctrine because they may not necessarily imply the invalidity of his conviction, which was based on a plea. *See* Dkts. 9, 9-1. Accordingly, the Court determines that Plaintiff's claims against Officers Takagaki and Murphy may go forward at this time.

### B. Claims Against Cpl. Prebula

In the original screening order, the Court notified Plaintiff that though he named Cpl. Prebula as a defendant, there was no mention of his name in any allegations in the complaint. Dkt. 8 at 8. The Court informed Plaintiff that there is no respondeat superior liability under Section 1983, but "a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations or knew of the violations [of subordinates] and failed to act to prevent them." *Id.* at 7 (quoting *Vasquez v. Cty. of Kern*, -- F.3d --, 2020 WL 501710, at *9 (9th Cir. 2020)). Plaintiff has failed to provide any additional information regarding claims against Cpl. Prebula. *See generally* Dkt. 9. Accordingly, Plaintiff has failed to adequately plead that Cpl. Prebula violated his constitutional rights. However, because the Court is granting leave to amend other claims (*see infra* Sections III.C, E), Plaintiff will have one more opportunity to amend his claims against Cpl. Prebula as directed in the original screening order. *See* Dkt. 8 at 8. Failure to amend the allegations against Cpl. Prebula will lead to a recommendation that Cpl. Prebula be dismissed from this action.

////

**C. Claims Against the "CSUMB Officers"**

Plaintiff has articulated claims against the "CSUMB Officers" but does not name these officers as defendants. *See generally* Dkt. 9. If Plaintiff wishes to proceed with his claims against these officers, he must name them as defendants. Furthermore, merely listing them as the "CSUMB Officers" is not sufficient because there are numerous officers within the CSUMB Police Department and service of process could not occur. Thus, Plaintiff must amend his complaint to provide the true names of these officers.

Alternatively, if Plaintiff is unable to provide the names of these officers, he may sue them as John Doe or Jane Doe defendants in his second amended complaint. For example, in place of the allegation in the FAC that "[t]he CSUMB officers . . . invaded my apartment" (Dkt. 9 at 7), the second amended complaint could allege that "John Doe or Jane Doe invaded my apartment." The Court cautions Plaintiff that "[a]lthough the use of a John Doe or Jane Doe defendant designation is acceptable to withstand dismissal of a complaint at the initial review stage, using a John Doe or Jane Doe defendant designation creates its own problem: that person cannot be served with process until he or she is identified by his or her real name." *Allen v. S.F.P.D.*, No. C 14-4538 LB, 2014 WL 5473543, at *1 (N.D. Cal. Oct. 28, 2014). Thus, "[t]he burden remains on the plaintiff to identify the defendant [and] the Court will not . . . investigate the name and identity of an unnamed defendant." *Id*. If Plaintiff has not identified the Doe defendants by the time this action is ready for decision, the Doe defendants will be dismissed without prejudice.

Accordingly, in the second amended complaint, Plaintiff must amend his claims against the "CSUMB Officers" to either provide their true names or to identify them as Doe defendants in the charging allegations. Plaintiff must also add the officers' true names or identify them as Doe defendants in the caption of his complaint and to the section of the complaint that identifies the defendants. If Plaintiff continues to assert claims against unidentified "CSUMB Officers," the Court will recommend that such claims be dismissed.

////

////

////

8

### D. Claims Against District Attorney Duffy

The Court also addressed Plaintiff's allegations against District Attorney Robin Duffy in the original screening order. Dkt. 8 at 8-9. As the Court explained, "[d]istrict attorneys are entitled to absolute prosecutorial immunity for conduct that is intimately associated with the judicial phase of the criminal process." *Id*. at 8 (quoting *Duffy v. Alameda Cty. District Attorney's Office*, No. 16-cv-5601-PJH, 2017 WL 2591286, at *2 (N.D. Cal. June 13, 2017)). The Court informed Plaintiff that for a claim against Duffy to pass scrutiny, Plaintiff would have to amend his complaint and explain why Duffy's actions were not be barred by prosecutorial immunity. Dkt. 8 at 8-9. Plaintiff's amended complaint includes various allegations against Duffy, including that she "pressed exaggerated charges . . . based on malicious complaint," "fabricated evidence," "refused to release the children school equipment for a whole year," "[r]efused to persecute (sic) Carlquest," and "destroyed and dissipated important evidence." Dkt. 9 at 7.

As in the original screening order, the Court finds that the vast majority of Plaintiff's claims against Duffy are barred by prosecutorial immunity. However, the Court does acknowledge that Plaintiff's claim regarding Duffy's alleged refusal to release property may not be covered by the doctrine of prosecutorial immunity. *See Inman v. Anderson*, 294 F. Supp. 3d 907, 916-917 (N.D. Cal. 2018) ("[The ADA's] alleged failure to return Plaintiff's property after the criminal charge against Plaintiff was dismissed does not appear to amount to conduct that is 'intimately associated with the judicial phase of the criminal process.'") Although Duffy may eventually be able to demonstrate that she is entitled to prosecutorial immunity for refusing to return Plaintiff's property, the Court cannot conclude at this stage of the proceedings that she is, in fact, entitled to prosecutorial immunity for this claim. Accordingly, the Court will allow the claim of refusing to release property to go forward. The Court will recommend that all other claims against Duffy be dismissed on the ground of prosecutorial immunity.

////

////

////

////

### E. Equal Protection Claims

In the original screening order, the Court provided an analysis of Plaintiff's allegations relating to race and religious discrimination. Dkt. 8 at 9-10. The Court noted that Plaintiff failed to (1) allege that he was a member of a protected class and (2) explain how any defendant discriminated against him based on his membership in any protected class. *Id*. In his FAC, Plaintiff states that he is "a middle Eastern Muslim" and that he "was an unfair target of harassment and discrimination by the law enforcement members who discriminated against" him "in the favor of" Ms. Carlquest, "an American Caucasian." Dkt. 9 at 6. He does not, however, explain who these "law enforcement members" are or how they discriminated against him. For instance, Plaintiff alleges that he was "told that I was mostly likely to lose [a trial] because of my ethnicity and religion," (Dkt. 9 at 4) but does not identify which defendant, if any, made such a statement. Because the Court is granting leave to amend other claims (*see supra* Sections III.B, C), Plaintiff will have one more opportunity to amend these claims as directed in the original screening order. *See* Dkt. 8 at 9-10. Failure to amend the allegations relating to race and religious discrimination will lead to a recommendation that these claims be dismissed from this action.

### IV. CONCLUSION

As discussed above, certain allegations in Plaintiff's FAC do not yet meet the requirements of Rule 8 of the Federal Rules of Civil Procedure but may be curable on amendment. Accordingly, the Court **GRANTS** Plaintiff leave to file a second amended complaint no later than **June 12, 2020**.

If the second amended complaint again fails to cure the identified defects, the Court will issue an order reassigning this case to a District Judge along with a recommendation that certain claims be dismissed. If Plaintiff does not file a second amended complaint, the Court will issue an order reassigning this case to a District Judge along with a recommendation that entire case be dismissed.

The Court again informs Plaintiff that the Federal Pro Se Program at the San Jose Courthouse provides free information and limited-scope legal advice to pro se litigants in federal civil cases. The Federal Pro Se Program can be reached by calling (408) 297-1480. In addition,

the Court offers a pro se handbook free of charge.  A copy of the handbook may be downloaded from https://cand.uscourts.gov/wp-content/uploads/2020/02/Pro_Se_Handbook_2020_links.pdf.

**SO ORDERED.**

Dated: April 10, 2020

_____
SUSAN VAN KEULEN
United States Magistrate Judge